* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with some modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties agree that on February 1, 2002, there was an employment relationship between the parties.
2. Defendant was self-insured with Key Risk Management Services designated as the servicing agent. *Page 2 
3. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
4. The parties agree that on February 1, 2002, plaintiff alleged a back injury as a result of a patient falling on her. Plaintiff received medical treatment at Western WakeMed Emergency Department, Concentra Medical Centers, and WakeMed Physical Therapy. The parties agree that plaintiff was not written out of work, but was provided light-duty restrictions, which defendant accommodated until plaintiff's termination on February 8, 2002.
5. The parties agree that all Industrial Commission forms filed in this claim, including the Form 19, Form 18, Form 18M, Form 33, Form 33R, and an Industrial Commission Order dated October 19, 2005, denying plaintiff's Form 18M will be judicially noticed by the undersigned in this claim.
6. At the hearing before the Deputy Commissioner, the parties also stipulated into evidence the following documents:
 a. Pre-Trial Agreement (Stipulated Exhibit 1);
 b. Medical records generated in the claim (Stipulated Exhibit 2);
 c. Plaintiff's discovery responses (Stipulated Exhibit 3); and
 d. Plaintiff's personnel file (Stipulated Exhibit 4).
 ISSUES
The issues to be resolved are as follows:
1. Is plaintiff's claim for additional benefits time barred by N.C. Gen. Stat. § 97-25?
2. Is plaintiff's claim for additional benefits time barred by N.C. Gen. Stat. § 97-25.1?
3. Is plaintiff's claim for additional benefits time barred by N.C. Gen. Stat. § 97-47? *Page 3 
4. Is plaintiff entitled to any benefits arising out of her February 1, 2002, injury?
 * * * * * * * * * * *
Based upon the competent evidence from the Commission record, the Full makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 48 years of age. She graduated from high school and has obtained certifications as a certified nursing assistant and in early child development. Her employment history includes work as a certified nursing assistant, cashier, convenience store manager, assembly line worker, and daycare worker.
2. On May 21, 2000, defendant hired plaintiff as a certified nursing assistant. On February 1, 2002, plaintiff reported that she had been injured when a patient fell on her as she was attempting to transfer the patient from the bed to the bathroom. Plaintiff reported her injury to defendant and on February 11, 2002, defendant completed a Form 19.
3. Plaintiff was immediately referred for treatment to the Western WakeMed Emergency Department where she complained of low back pain. Plaintiff was diagnosed with an acute myofascial strain, given medications, and advised to return to work with restrictions. Thereafter, plaintiff was referred to Concentra Medical Centers where she came under the care of Dr. Michael Landolf. Plaintiff first presented to Dr. Landolf on February 5, 2002, with complaints of mid-back and left leg pain. Dr. Landolf diagnosed plaintiff with a thoracic strain, prescribed medication and physical therapy three times per week for two to three weeks and recommended that plaintiff return to light duty work. *Page 4 
4. Plaintiff's initial evaluation at WakeMed Physical Therapy was performed on February 7, 2002. Plaintiff complained to physical therapist, Timothy Ryan, of lower thoracic and lumbar spine pain, as well as right hip pain and left calf achiness. Thereafter, plaintiff presented to Western WakeMed Emergency Department complaining of increased pain following her physical therapy appointment, where she received additional medication.
5. On February 8, 2002, plaintiff again presented to Dr. Landolf, reporting increased symptoms following physical therapy. Plaintiff complained specifically of severe, constant back pain without radiation. Dr. Landolf noted plaintiff had no tenderness or swelling in her thoracic spine region, although she reported tenderness in her lumbar spine region down to her sacrum. A straight leg raising testing was negative bilaterally. Dr. Landolf noted plaintiff's thoracic strain had resolved and that her complaints of low back pain seemed inconsistent with the previous evaluation. Dr. Landolf recommended plaintiff continue to work with restrictions and participate in physical therapy.
6. On February 11, 2002, plaintiff returned to Dr. Landolf with complaints of continued back pain. Dr. Landolf opined that plaintiff's thoracic strain, which arose from the initial injury, seemed to have resolved. Dr. Landolf noted plaintiff was continuing to complain of lumbar discomfort of unknown etiology. He continued plaintiff's medications, her physical therapy referrals, and her work restrictions.
7. Following plaintiff's February 11, 2002, appointment with Dr. Landolf, she presented to the x-ray department for a lumbar spine x-ray and reported to Dr. Landolf that she had increased pain following the x-ray. Plaintiff's x-ray was unremarkable with the exception of facet joint narrowing at L4-5 and L5-S1 bilaterally. At this time, plaintiff questioned *Page 5 
Dr. Landolf's treatment so he suggested treating with other providers; however, plaintiff chose to return to Dr. Landolf who ordered a lumbar MRI.
8. On February 12, 2002, plaintiff's physical therapist noted plaintiff refused to make more than one appointment at a time and that she was refusing to comply with the recommendation that she attend physical therapy twice per week.
9. On February 15, 2002, plaintiff presented to Dr. Landolf reporting no improvement in her symptoms. Plaintiff reported pain in her upper back, mid back and lower back and described the pain as constant, dull and severe, without radiation. Dr. Landolf opined that plaintiff's complaints of back pain were inconsistent, of a non-specific variable and seemed to migrate. He continued to recommend medications, physical therapy, and work restrictions.
10. On February 19, 2002, an MRI of plaintiff's thoracic spine was performed, which was found to be normal. There was no evidence of a compression fracture, disc herniation or any significant degenerative spondylolisthesis.
11. On February 22, 2002, plaintiff again presented to Dr. Landolf with complaints of constant mid to low back pain. Dr. Landolf discussed plaintiff's case with her physical therapist who stated that he was unable to obtain any consistency on evaluation regarding plaintiff's back pain and that he was uncertain for what condition he was treating plaintiff due to the inconsistencies. Dr. Landolf released plaintiff from further physical therapy due to a lack of progress. At this meeting, Dr. Landolf discussed at length with plaintiff her normal MRI and the lack of objective findings on physical examination. He opined that plaintiff should present to her own physician to look for a possible metabolic cause of her pain, such as hypothyroidism or electrolyte abnormalities. Since Dr. Landolf had no specific diagnosis other than pain, he released plaintiff to her own physician. *Page 6 
12. As plaintiff testified at the hearing before the Deputy Commissioner and as the stipulated medical records reveal, other than her treatment at Western WakeMed Emergency Department and with Dr. Landolf, the only other treatment she had sought was with a chiropractor, Dr. Charles Kubasko. Plaintiff testified she saw Dr. Kubasko on one or two occasions. One record, dated February 25, 2002 was admitted into evidence at the hearing before the Deputy Commissioner.
13. On February 8, 2002, defendant terminated plaintiff for violating a policy, which required her to notify personnel before she left her assigned floor and the patients to whom she had been assigned. Plaintiff had been disciplined for a similar violation in June 2001.
14. The medical records in evidence reveal plaintiff was never released from work and plaintiff testified to this fact. David Byrd, the adjuster for this matter testified at the hearing before the Deputy Commissioner that no indemnity was ever paid and that the claim was treated as a medical-only claim.
15. Plaintiff filed a Form 18M and Form 33 on September 12, 2005. On October 19, 2005, the Form 18M was denied administratively by the Industrial Commission because no medical documentation had been provided to support plaintiff's claim for additional treatment.
16. Since being terminated by defendant in February 2002, plaintiff testified she has held at least three other positions. She worked as a certified nursing assistant providing patient care for Joyner Health Care, in a childcare center and as a manager/cashier at a convenience store.
17. At the hearing before the Deputy Commissioner, plaintiff also testified that this case had taken a toll on her, that it had slowed her down, and that she wanted to get rid of her pain. *Page 7 
18. David Byrd, the adjuster for this matter, further testified as to the accuracy of defendant's Exhibit #1, Medical Payments Made On Claim 02026300, and that the date of the last check issued for payment of medical expenses in this claim was May 23, 2002. In addition, Mr. Byrd testified as to defendant's Exhibit #2, Form 28B, filed with the Industrial Commission on October 2, 2002, which also revealed that the last payment for medical compensation was on May 23, 2002. Mr. Byrd testified that there was neither an indication in the servicing agent's file that plaintiff had contacted the servicing agent between the filing of the Form 28B in October 2002 and September 2005 when plaintiff filed a Form 18M and Form 33 nor an indication that any medical expenses had been submitted.
19. Plaintiff filed her first application for additional medical compensation with the Industrial Commission on September 12, 2005 which was greater than three years after the last payment of medical expenses in this claim.
 * * * * * * * * * * * *Page 8 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-25.1 provides that "the right to medical compensation shall terminate two years after the employer's last payment of medical or indemnity compensation unless, prior to expiration of this period . . . the employee files with the Commission an application for additional medical compensation which is thereafter approved by the Commission . . . or the Commission on its own motion orders additional medical compensation." The last payment for medical compensation in this matter was on May 23, 2002. Therefore, plaintiff's right to additional medical compensation terminated on May 23, 2004. Plaintiff's first application for additional medical compensation was filed on September 12, 2005, which was greater than two years after defendant's last payment. Plaintiff is barred from additional medical compensation. N.C. Gen. Stat. §§ 97-25; 97-25.1; 97-47.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be and is hereby denied.
2. The costs of this action shall be paid by defendant.
This the ___ day of November 2007.
S/___________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/______________ BUCK LATTIMORE COMMISSIONER
 S/________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1